**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| DANIEL ZEPEDA, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, a Virginia corporation,<br><br>CAPITAL ONE, N.A., a Virginia corporation,<br><br>and<br><br>CAPITAL ONE BANK (USA), N.A., a Virginia corporation,<br><br>Defendants. | Case No.: 1:25-cv-00114<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Zepeda ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action through counsel against Capital One Financial Corporation, Capital One, N.A., and Capital One Bank (USA), N.A. (collectively the "Defendants") and alleges as follows:

**INTRODUCTION**

1. Starting on Wednesday January 15, 2025 and continuing through the evening of Friday January 18, 2025, Capital One left thousands of banking customers unable to access their bank accounts, process payments, or receive direct deposits.

2. Plaintiff brings this action individually and on behalf of a class of similarly situated holders of Capital One banking accounts. This lawsuit seeks damages and injunctive relief arising from Defendants' unlawful conduct, including denying account holders' access to their funds,

1

failing to make funds available in a timely matter, and misappropriating funds held in Capital One accounts.

3. Due to Capital One's breach of its contract, negligence, and unfair and/or unlawful conduct, Plaintiff and Class members have been unable to access their funds, depriving them of the ability to purchase essential items such as food, clothing, and shelter.

4. Plaintiff and Class members seek compensatory damages, interest for Capital One's late transfer of deposits, punitive damages where appropriate and permitted by law, injunctive relief to prevent the continuation of Capital One's misconduct, as well as restitution and disgorgement of improperly obtained funds.

## PARTIES

5. Plaintiff Daniel Zepeda is a resident and citizen of California.

6. Defendant Capital One Bank (USA), N.A. and Capital One, N.A., offer an array of financial products and services to consumers, small businesses, and commercial clients, including credit cards. It is among the biggest banks in the United States, with over $370 billion in total assets. During the class period, defined below, credit cards accounted for a large majority of Capital One's revenues.

7. Capital One Bank (USA), National Association, and Capital One, National Association are collectively hereinafter referred to as "Capital One."

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class are citizens of a state different from Defendants.

9. Venue is proper pursuant to 28 U.S.C. §1391 in that Defendants have their principal

place of business in this District; some of the acts and transactions giving rise to this action occurred in this District; Defendants are authorized to conduct business in this District, have intentionally availed itself of the laws and markets within this District through distribution and sale of their products and services in this District, do substantial business in this District, and are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

10. On or about January 16, 2025, Capital One experienced an outage that left thousands of banking customers unable to access their bank accounts, process payments, or receive direct deposits.

11. The outage continued on Friday January 18, 2025, which coincided with the mid-month pay period.

12. Numerous account holders reported being unable to access their paychecks, leaving them in a difficult position to pay bills, buy groceries, and cover other essential expenses.

13. Capital One notified all its customers via email of a system issue affecting deposits, payments, and transfers.

14. According to the notice, Capital One began experiencing a service disruption on January 15, 2025, attributing the issue to a technical problem with one of its service providers. The notice further explained that the disruption caused delays in processing various transactions, including direct deposits, early pay credits for direct deposits, electronic payments, and transfers.

15. The email advises that services are expected to "gradually begin to return to normal [today] and the majority of issues to be resolved by Friday morning."

16. Unfortunately, the loss of access to accounts lasted longer than anticipated. The system remained down, locking customers out through Friday evening.

17. The following message from Capital One was still posted in customer accounts on Friday, January 18, 2025:



18. While the system was down, Capital One customers were unable to access their funds, causing significant hardship. Many struggled to pay for essential needs such as food, rent, electricity, and gas. Additionally, the inability to pay household bills led to the accrual of late fees, further compounding the financial strain.

19. As a direct and proximate result of the actions described above, Plaintiff and members of the proposed classes have been damaged.

## PLAINTIFF'S EXPERIENCE

20. Plaintiff Daniel Zepeda has two Capital One accounts—one 360 checking and one 360 Performance savings.

21. On or about January 13, Mr. Zepeda wire transferred $280 from his Wells Fargo account to his Capital One 360 Checking account.

22. On January 16, Mr. Zepeda attempted to access his online Capital One account to check his balance but was unable to do so. Instead, he received the following message: "Starting on June 15, 2025, Capital One began experiencing a disruption impacting the processing of some deposits, payments, and transfers, which is due to a technical issue with one of our service providers." (Exhibit A).

23. Despite Capital One's express promise in its 360 Checking Disclosures that it

would make his wired funds available the same day of the deposit, this technical issue persisted and prevented Mr. Zepeda from accessing the funds he had transferred from his Wells Fargo account for several days, from Thursday, January 16, through Monday, January 20. During this period, Mr. Zepeda had no access to any financial resources, as he had transferred all his available funds to his Capital One account, which remained inaccessible

24. Consequently, he was left without any financial resources and was unable to carry out his usual activities. Mr. Zepeda had no choice but to wait until the outage was resolved to regain access to his funds.

25. Capital One's failure to make Mr. Zepeda's funds available caused him harm for which Capital One owes him interest at the applicable rate for the late payment of his funds.

26. Capital One also owes him any profit it made while holding the funds in the "float" when those funds were supposed to be in Mr. Zepeda's account for him to access.

27. Plaintiff and Class Members were induced into depositing money into their Capital One accounts because they were led to believe their funds would be "safe and protected" with unhindered access to these monies.

28. The terms of Capital One's waiver of right to trial by jury is unconscionable and Plaintiff and Class Members would not have agreed to those terms or deposited any money with Capital One had they known about the fraudulent, unlawful and unfair activity and misrepresentations as described in this Complaint.

**CLASS ALLEGATIONS**

29. A class action is the proper form to bring Plaintiff's claims under rule 23 of the Federal Rules of Civil Procedures. The potential classes are so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the

claims or defenses of the representative parties are typical of the claims or defenses of the classes, and the representative parties will fairly and adequately protect the interests of the classes.

30. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **All consumers in the United States who held a Capital One account and were denied access to their accounts or funds starting January 15, 2025.**

31. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff proposes the following sub-class definition, subject to amendment as appropriate:

> **All consumers in California who held a Capital One account and were denied access to their accounts or funds starting January 15, 2025.**

32. Excluded from the Classes are Defendants' officers and directors, and any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

33. This action satisfies all of the requirements of rule 23 of the Federal Rules of Civil Procedure including numerosity, commonality, typicality, adequacy, predominance and superiority.

34. <u>Numerosity:</u> Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are at least thousands of putative Class members throughout the United States. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery.

35. <u>Commonality:</u> This action involves common questions of law and fact, which

predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a)    whether Defendants owed duties to Plaintiff and the proposed class, the scope of those duties and if they breached those duties;

    b)    whether Defendants' conduct was unfair or unlawful;

    c)    whether Defendants breached their contracts with Plaintiff and the proposed class:

    d)    whether Plaintiff, the Class have sustained damages as a result of Defendants' conduct alleged herein and, if so, what is the proper measure of such damages;

    e)    whether Plaintiff and the Class are entitled to restitution and, if so, what is the proper measure of restitution; and,

    f)    whether Plaintiff and the Class are entitled to declaratory and injunctive relief.

36.    <u>Typicality</u>: Plaintiff's claims are typical of those of the other Class members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class.

37.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

38.    <u>Superiority:</u> The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available

methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

39. The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation. Plaintiff reserves the right to modify or amend the definition of the proposed classes, before the Court determines whether certification is appropriate and as the parties engage in discovery.

40. The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

# COUNT I
# BREACH OF CONTRACT UNDER VA LAW
(On Behalf of the Plaintiff and the Class)

41. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

42. Plaintiff, and each member of the proposed Class, formed a contract with Defendants at the time they opened an account at Capital One.

43. Capital One's 360 Checking disclosures state that funds made by Electronic direct deposits, Cash deposits at a Capital One ATM, Cash deposits made to a teller, or Wire Transfers, will be available "The Same business day":[1]

| WHEN A DEPOSIT IS MADE BY... | THOSE FUNDS ARE AVAILABLE ON... |
|---|---|
| • Electronic direct deposits<br>• Cash deposits at a Capital One ATM<br>• Cash deposits made to a teller<br>• Wire Transfers | The same business day |

44. Capital One breached its Contract with respect to thousands of customers including Plaintiff when it failed to make funds available on the same business day as promised when deposits were made by Electronic direct deposits, Cash deposits at a Capital One ATM, Cash deposits made to a teller, or Wire Transfers. Instead, Capital One made funds available several days late.

45. Defendants breached the terms of this contract with Plaintiff and the proposed Class by denying customers access to their funds and, thus, not providing a product and service which

---

[1] https://www.capitalone.com/bank/disclosures/checking-accounts/online-checking-account/ (last visited January 22, 2025).

9

provided the promised benefits as described above.

46. Plaintiff and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

47. As a result of Defendants' breach of its contract and warranties, Plaintiff and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE
(On Behalf of the Plaintiff and Class)

48. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

49. Defendants owed duties to Plaintiff and the proposed Class as Capital One account holders and paying customers to use reasonable care to protect and secure customer funds and provide access to those monies.

50. Defendants breached their duties to Plaintiff and the proposed Class by failing to provide customers access to their Capital One funds for a prolonged period of time causing hardship to the Plaintiff and the proposed classes.

51. Defendants breached their duties to Plaintiff and the proposed Class by failing to secure customer funds in that customers have noted discrepancies in their account balances and funds missing.

52. Defendants failed to use reasonable care in communicating the information about the Capital One system update and restriction of access to customer funds, as well as the safety and security of account funds.

53. As a direct and proximate result of Defendants' negligence and conduct, Plaintiff and the proposed Class were damaged in an amount to be proven at trial.

## COUNT III
## CONVERSION
(On Behalf of the Plaintiff and the Class)

54. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

55. Plaintiff, and each member of the Class, deposited money into their Capital One accounts.

56. Defendants knowingly and intentionally exercised control over the monies belonging to Plaintiff and Class members, retraining funds and denying Plaintiff and Class members access to their funds.

57. Because of the unlawful restraint imposed by Defendants, the rights of Plaintiff and the Class members in their funds were interfered with and their funds could not be used in the matter in which they desired.

58. Defendants also unlawfully imposed fees in connection with these restraints, depriving Class members of the use and control over their property.

59. As a result of the foregoing actions of Defendants, Plaintiff and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT IV
## Unjust Enrichment
(On Behalf of the Plaintiff and the Class)

60. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

61. Plaintiff and the Class members conferred a benefit on Capital One by permitting Capital One to hold their funds, which it earns profit from.

62. From January 15, 2025 to approximately January 20, 2025, Capital One held funds

in the "float," thereby earning it profit on those funds, when those funds were supposed to be transferred to Plaintiff and the Class members.

63. Capital One was unjustly enriched by retaining Plaintiff and the Class members' funds, while depriving Plaintiff and Class members' use of those funds.

64. Plaintiff and the Class members seek an order from this Court requiring Capital One to disgorge all proceeds, profits, benefits, and other compensation obtained by Capital One from its failure to make deposit funds available.

65. Equitable relief in the form of restitution may be appropriate because Plaintiff may lack an adequate remedy at law. Thus, even if legal remedies may be available, Plaintiff seeks restitution as equitable remedy in the alternative to legal remedies which are as of yet uncertain. the Court may award restitution even if it determines that Plaintiff and Class members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing. Legal claims for damages are not equally certain as restitution which depend on interpretation of Capital One's Contract. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

### COUNT V
### Violation of the CLRA, Cal. Civ. Code Section 1750 *et. seq.*
(On Behalf of the Plaintiff and California Sub-Class)

66. Plaintiff incorporates the preceding allegations by reference as if fully set forth Defendants are each a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

67. Plaintiff and Class members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d).. 48) The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale

or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

68. Capital One's representation that it would make Electronic direct deposits, Cash deposits at a Capital One ATM, Cash deposits made to a teller, or Wire Transfers available on the same business day constitutes a deceptive and misleading business practice in violation of the CLRA.

69. Capital One continue to violate the CLRA and continue to injure the public by using false, deceptive, and misleading terms in its Checking disclosures.

70. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent Capital One from continuing to engage in these deceptive and illegal practices. No remedy at law is available that will remedy Plaintiff and Class members' ongoing harm from Capital One's failure to prevent outages of this kind. If an injunction is not issued requiring Capital One to address the base issues that allowed such an outage, Plaintiff and Class members will continue to suffer irreparable injury.

71. Capital One's violation of the CLRA caused Plaintiff and putative Class members to suffer ascertainable losses. Specifically, Capital One's false, deceptive, and misleading terms of its Checking disclosures which led its consumers to bank with Capital One expecting they would receive funds deposited by Electronic direct deposits, Cash deposits at a Capital One ATM, Cash deposits made to a teller, or Wire Transfers on the same day.

72. Pursuant to Section 1782(d) of the CLRA, Plaintiff reserves the right to amend this Complaint to include a request for damages under the CLRA pursuant to Section 1782(a) of the CLRA within thirty (30) days of providing the required notice.

**COUNT VI**
**Violation of the UCL, Business and Professions Section 17200 *et. seq.***
(On Behalf of the Plaintiff and California Sub-Class)

73. Plaintiff incorporates the preceding allegations by reference as if fully set forth

California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

74. Capital One's conduct related to the failure to deposit funds on time despite stating it would make funds available the same day violated each of this statute's three prongs.

75. Capital One committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, et seq., by violating the Consumers Legal Remedies Act, as set forth above.

76. Capital One committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., by representing that Capital One would make certain deposits available the same day but then failing to do so on a massive scale such that its customers were left without the ability to pay important bills and other obligations.

77. Defendants committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when misrepresenting that it would make certain funds available on the same day. Such representations are likely to mislead the public with regard to when they can depend on Capital One to make needed funds available.

78. As a direct and proximate result of the foregoing unfair and deceptive practices, Plaintiff and Class members suffered and will continue to suffer actual harm—while Capital One profits from holding their funds in the "float." Thus, as a result of its unfair and deceptive conduct, Defendants have been unjustly enriched and should be required to disgorge all unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

79. Plaintiff and the Class further seek an order enjoining Defendants' unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc.

§ 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for relief as follows:

1. Declaring this action to be a proper class action, certifying the proposed Classes appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

2. An Order for injunctive relief requiring Defendants to cease and desist from engaging in the unlawful and unfair practices alleged in the Complaint;

3. An order granting declaratory relief and both retrospective and prospective injunctive relief, as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices described herein and providing injunctive relief to address Defendants' misconduct;

4. A judgment awarding Plaintiff and Class members restitution, including but not limited to disgorgement of all profits and unjust enrichment gained by Defendants through their unlawful and unfair business practices;

5. A judgment awarding Plaintiff and Class members actual damages;

6. Interest for late payment, pre-judgment and post-judgment interest;

7. Attorneys' fees, expenses, and the costs of this action; and

8. Further relief as this Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 22, 2025                    Respectfully,

                                           /s/ Glenn Chappell

Glenn Chappell (Va. Bar No. 92153)
Katherine M. Aizpuru*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, D.C. 20006
Phone: (202) 973-0900
*gchappell@tzlegal.com*
*kaizpuru@tzlegal.com*

Annick M. Persinger*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Tel: (510) 254-6808
Fax: (202) 973-0900
*apersinger@tzlegal.com*

*Counsel for Plaintiff and proposed class*

*\* Pro Hac Vice application to be submitted*